# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
One (1) Blue iPhone Model #: A2342 IMEI #: Unknown )   Case No.  '24 MJ0617
Seizure Number: R6-24-0013 exhibit N-2 )
("Target Device") )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A, incorporated herein by reference

located in the  Southern  District of  California , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| Title 21, U.S.C., Sections 841 and 846 | Distribution of Controlled Substances and Conspiracy to Distribute Controlled Substances |

The application is based on these facts:
See Attached Affidavit, incorporated herein by reference

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____ )* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Edgar Moreno*
Applicant's signature

Edgar Moreno, Drug Enforcement Officer Task Force Officer
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephone *(specify reliable electronic means)*.

*Allison H. Goddard*
Judge's signature

Date: 02/16/2024

City and state: San Diego, California    Hon. Allison H. Goddard, United States Magistrate Judge
Printed name and title

# AFFIDAVIT

I, Drug Enforcement Administration (DEA) Task Force Officer (TFO) Edgar Moreno, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of a warrant to search the following electronic device:

> One (1) Blue iPhone Model #: A2342
> IMEI #: Unknown
> Seizure Number: R6-24-0013 exhibit N-2
> ("**Target Device**")

as further described in Attachment A, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 841 and 846, as further described in Attachment B.

2. The requested warrant relates to the investigation of Jimmy Harvey Zavala-Murillo ("ZAVALA" or "Defendant") and others in connection with violations of Title 21, United States Code, Sections 841 and 846, Distribution of Controlled Substances and Conspiracy to Distribute Controlled Substances (collectively, the "Target Offenses"). The **Target Device** is currently in the custody of the DEA and located at 2425 La Brucherie Road, Imperial, California.

3. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Device**, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## BACKGROUND

4. I am a sworn full-time Peace Officer with the Imperial County Sheriff's Office, within the meaning of California Penal Code section 830.1 and am currently assigned as a Task Force Officer (TFO) to the DEA at the San Diego Field Division Imperial County

1

District Office. In connection with my official DEA TFO duties, I investigate criminal violations of federal drug laws and related offenses, including violations of Title 21, United States Code, 801 et seq. and the Federal Controlled Substance Act. I have been employed with the Imperial County Sheriff's Office since 2016 and have been assigned to DEA since August 26, 2022.

5. During my time as a DEA TFO, I have participated in the investigation of various Drug Trafficking Organizations (DTO) and Money Laundering Organizations (MLO) involved in the importation and distribution of controlled substances into and through the Southern District of California and beyond and the laundering of monetary instruments. I have participated in and conducted investigations of violations of various Federal criminal laws, including distribution of controlled substances, use of a communication facilities to commit narcotic offenses, importation of controlled substances, conspiracy to import, possess and distribute controlled substances, bulk cash smuggling, and money laundering, all in violation of Titles 18, 21, and 31, of the United States Code and various California Health and Safety Code and California Penal Code sections. These investigations resulted in arrests of individuals who have imported, smuggled, received, and distributed controlled substances. These investigations have also resulted in seizures of bulk cash, property, assets, and controlled substances. Through these investigations and training, I am familiar with the operations of illegal international DTOs and MLOs in in the United States and abroad.

6. Through my training, experience, and conversations with other law enforcement officers experienced in narcotics trafficking and money laundering investigations, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry and those who possesses and distribute narcotics within and through-out the United States. I have received specialized training in narcotics investigations and law enforcement practices from state and federal law enforcement agencies such as the California Department of Justice (CA DOJ) and the California Police Officer Standardized Training (POST).

7. During my career, I have conducted numerous narcotics investigations. I have participated in drug investigations leading to the seizure of illegal controlled substances, seizure of the illicit proceeds from the sale of controlled substances, and the arrests of individuals for drug law and money laundering violations. The nature of my ongoing work with DEA requires that I keep apprised of recent trends and developments involved in the investigations of drug traffickers, and I regularly communicate with officers and agents from United States Border Patrol, Customs and Border Protection, Homeland Security Investigations, Federal Bureau of Investigations, and various other state and local law enforcement officers regarding the same. Furthermore, I have discussed their investigative techniques and experiences with them operating within the Southern District of California.

8. I have participated in numerous surveillance operations, including several involving the use of wire intercepts and other electronic surveillance techniques. During those operations, I used traditional investigative techniques, including participating in monitoring wiretaps, interviewing drug traffickers, and utilizing confidential human sources to purchase narcotics. From my training and experience, I have become familiar with investigative methods and enforcement of state and federal narcotics laws. Based upon my experience, I have also become familiar with methodology, language, and patterns used by narcotics traffickers.

9. By virtue as a Task Force Officer with DEA, I have performed various tasks, which include, but are not limited to:

    a. Functioning as a case agent, which entails the supervision of specific investigations involving the trafficking of drugs, the laundering of money, and the smuggling of bulk cash.

    b. Functioning as a surveillance agent and thereby observing and recording movements of persons trafficking in controlled substances and those suspected of trafficking in controlled substances;

    c. Interviewing witnesses, cooperating individuals, and informants relative to the illegal trafficking of controlled substances and the distribution of

monies and assets derived from the illegal trafficking of controlled substances, laundering of monetary instruments, and smuggling bulk cash.

d. Attending specialized training in wire and electronic interceptions and the use of wire and electronic interception equipment. I am certified by the California State Attorney General's Office in the practical, technical and legal aspects of court ordered wiretaps under California Penal Code Section 629.50, et seq.

10. I am aware that it is common practice for drug traffickers to work in concert utilizing cellular telephones to maintain and store communications and related items with co-conspirators in order to further their criminal activities. A common tactic utilized by narcotics traffickers is to transport controlled substances within the United States by concealing the controlled substances in vehicles that travel within the United States, specifically, within Imperial County prior to distribution of the controlled substances. With respect to the transportation and distribution of drugs in this manner, I am aware that drug traffickers in Mexico and the United States frequently communicate with the individuals responsible for transporting and distributing the controlled substances within the United States. These communications can occur before, during and after the drugs are transported and distributed within the United States. For example, prior to the transportation, drug traffickers frequently communicate with the driver regarding arrangements and preparation for the drug transportation. When the transportation is underway, drug traffickers frequently communicate with the driver to remotely monitor the progress of the drugs, provide instructions to the driver and warn accomplices about law enforcement activity. When the drugs have been transported further into the United States, drug traffickers may communicate with the courier or driver to provide further instructions regarding the transportation of the drugs for distribution within the United States.

11. Based on my training, experience, and information provided to me by other agents from federal, state, and local law enforcement agencies, I am familiar with the

4

methods utilized in narcotics trafficking operations, as well as the methods and means used by DTOs to control narcotics trafficking. Specifically, I am familiar with the importation of illegal narcotics into the United States from Mexico, the transportation of narcotics to centralized distribution points such as San Diego and Los Angeles, and the distribution of narcotics to destination points throughout the United States. Additionally, I know that once the narcotics reach their final destination cities, they are distributed by wholesale dealers down to street level users often through mid-level distributors. I am also aware that drug trafficking organizations must collect and transport drug proceeds from the sale of their drugs and often these drug proceeds are transported in the form of bulk currency. I am also aware that DTOs often use multiple co-conspirators to perform various tasks, including, but not limited to, loading and unloading narcotics and bulk cash from vehicles and engage in money laundering.

12. Based upon my training, experience, and consultations with law enforcement officers experienced in controlled substance investigations, and all the facts and opinions set forth, I am aware that conspiracies involving distribution of controlled substances generate many types of evidence including, but not limited to, cellular phone and computer-related evidence such as voicemail messages referring to the arrangements of payment, names and contact information for co-conspirators, photographs, text messages, emails, messages from text messaging applications such as WhatsApp, Text Now, social networking messages, and videos reflecting co-conspirators or illegal activity. I am also aware that cellular telephones (including their SIM card(s) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones of individuals involved in the importation of narcotics may yield evidence:

    a.    tending to indicate efforts to transport controlled substances within the United States;

    b.    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the transportation of controlled substances within the United States;

    c.    tending to identify co-conspirators, criminal associates, or others involved in transportation of controlled substances within the United States;

    d.    tending to identify travel to or presence at locations involved in the transportation and distribution of controlled substances within the United States, such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

13. On Monday, November 27, 2023, at approximately 2:20 p.m., Jimmy Harvey ZAVALA-Murillo was encountered in primary inspection at the United States Border Patrol ("USBP") Highway 86 Checkpoint ("the checkpoint") located near Westmorland, California by Border Patrol Agent (BPA) Nolan Kennedy as the driver, registered owner and sole occupant of a blue Chevrolet Suburban, bearing California plate number 5CDJ879. During the primary inspection, ZAVALA was on the phone and BPA Kennedy asked him to end the conversation. ZAVALA stated he was a United States Citizen and presented a valid United States Passport. ZAVALA also stated he was traveling from Mexicali, Mexico where he went to the dentist because he does not have any money. Upon being asked if he had any additional documentation, ZAVALA took out three California identification cards, including one that was expired. BPA Kennedy noticed ZAVALA's hand was visibly shaking during this process. Based on ZAVALA's behavior of attempting

1  to use a diversion in the form of talking on the phone as he approached primary inspection
2  to distract BPA Kennedy from conducting his inspection, ZAVALA's overly talkative
3  behavior, and his signs of nervousness, BPA Kennedy asked for consent to search
4  ZAVALA's vehicle. ZAVALA agreed and was referred to secondary inspection.

5  14.  In secondary inspection, BPA Henry Ciudadreal and his Human Narcotics
6  Detection Dog ("HNDD") conducted a consented canine search of the exterior of the
7  vehicle. A canine sniff around the exterior of the vehicle produced a positive alert to the
8  driver's side wheel well towards the gas tank. BPA Ciudadreal conducted a thorough
9  inspection of the undercarriage of the vehicle where he observed fresh scuff marks and
10 tooling on the gas tank. BPA Ciudadreal scoped the inside of the gas tank with his video
11 scope. BPA Ciudadreal observed the fuel to be murky and inconsistent with gasoline, and
12 observed the liquid on his scope to turn white and crystallize when removed from the liquid,
13 a characteristic consistent with methamphetamine suspended in solution. BPA Ciudadreal
14 then retrieved a Narcotics testing kit, a NIK Kit, and tested a sample of liquid solution from
15 the gas tank, which resulted in a positive test for the characteristic of methamphetamine,
16 as witnessed by BPA Marcos Garcia.

17 15.  A subsequent inspection of the vehicle led to USBP's discovery and seizure
18 of approximately 99.140 kilograms of suspected methamphetamine suspended in 26.19
19 gallons of solution.

20 16.  At approximately 2:40 pm, ZAVALA was escorted by USBP to a secured area
21 at the checkpoint and placed under arrest for transportation of a controlled substance.
22 ZAVALA then said, "OK what's Next?" He then stated, "Do you want me to tell you where
23 its at?" USBP agents found one electronic device on his person in his pant pocket: a blue
24 iPhone Model #: A2342 (**Target Device**).

25                                    **METHODOLOGY**
26 17.  It is not possible to determine, merely by knowing the cellular telephone's
27 make, model and serial number, the nature and types of services to which the device is
28 subscribed and the nature of the data stored on the device. Cellular devices today can be

simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer. With regard to electronic storage devices, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including tools to identify data subject to seizure pursuant to this warrant, and to exclude certain data from analysis, such as known operating system and application files. The identification and extraction process, accordingly, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date this warrant is signed, absent further application to this court. Moreover, all forensic analysis of the imaged data will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

18. Following the issuance of this warrant, I will collect the **Target Device** and subject it to analysis. All forensic analysis of the data contained within the telephone and

8

its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

19. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

20. Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

## CONCLUSION

21. Based on the facts and information set forth above, I submit there is probable cause to believe that a search of the **Target Device** will yield evidence of Defendant's violations of Title 21, United States Code, Sections 841 and 846. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item described in Attachment A and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

					*Edgar Moreno*
					Edgar Moreno, Task Force Officer (TFO)
					Drug Enforcement Administration

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 16th day of February, 2024.

*Allison H. Goddard*
_____
Honorable Allison H. Goddard
United States Magistrate Judge

9

## ATTACHMENT A

PROPERTY TO BE SEARCHED

The following property is to be searched:

>One (1) Blue iPhone Model #: A2342
>IMEI #: Unknown
>Seizure Number: R6-24-0013 exhibit N-2
>("**Target Device**")

The **Target Device** is currently in the custody of Drug Enforcement Administration and located at 2425 La Brucherie Road, Imperial, California 92251.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone and electronic storage devices for evidence described below.  The seizure and search of the cellular telephone and electronic storage devices shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone and electronic storage devices will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of October 27, 2023 up to and including November 27, 2023.

a. tending to indicate efforts to transport controlled substances within the United States;

b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the transportation of controlled substances within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in transportation of controlled substances within the United States;

d. tending to identify travel to or presence at locations involved in the transportation and distribution of controlled substances within the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

which are evidence of violations of Title 21, United States Code, Sections 841 and 846.